UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRANDON MAURICE HEMPHILL,

              Plaintiff,

v.

M. HULL et al.,

              Defendants.

_____/

Case No. 1:24-cv-777

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4, PageID.252.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case. . .." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Corrections Officers M. Hull, Unknown Kimble, and Unknown Carter.

Plaintiff alleges that he arrived at LCF on April 3, 2024. (ECF No. 1, PageID.3.) Plaintiff states that on April 5, 2024, he was placed on an unscheduled mental health appointment. Plaintiff reports that he was awakened from sleep by Defendant Kimble, who told Plaintiff about his callout

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

and that they were waiting for Plaintiff. Plaintiff arrived at the school building and reported to Defendant Hull. Defendant Hull indicated to Plaintiff that he would write a Class II misconduct ticket because Plaintiff was "late for the appointment."[2] (Misconduct Appeal, ECF No. 1-3, PageID.15.) Plaintiff explained that he was late because he never received a callout. (*Id.*) Defendant Hull called Plaintiff a liar because Defendant Kimble had told Hull that Plaintiff was late because he was "dragging [his] ass." (*Id.*)

Plaintiff informed Hull that he would write a grievance against Defendant Hull "about this incident." (*Id.*) Plaintiff alleges that the grievance he threatened was about "being called a liar" and being threatened with a ticket for "being late for an unscheduled mental health call-out." (Compl., ECF No.1, PageID.5.)  When Plaintiff drafted the grievance, he did not complain about Hull calling Plaintiff a liar, he complained that Hull threatened to get Plaintiff "found guilty" on the ticket faster than Plaintiff could write a grievance. (*Id.*, PageID.3; Grievance, ECF No. 1-2, PageID.13; Misconduct Appeal, ECF No 1-3, PageID.15.)

Plaintiff had a misconduct hearing on April 15, 2024, which was conducted by Defendant Carter. (Compl., ECF No. 1, PageID.3.) During the hearing, Defendant Carter called Defendant Hull on the phone to get Defendant Hull's statement. (*Id.*, PageID.3–4.) Following the call, Defendant Carter told Plaintiff that there was nothing he could do and that he could not go against his officer. Defendant Carter then stated, "what I will do is give you one day for the inconvenience." (*Id.*, PageID.4.) Several days later, on April 19, 2024, Plaintiff filed the grievance. (*Id.*) The grievance was rejected as "non-grievable" because it was related to the misconduct. (*Id.*; Grievance, ECF No. 1-2, PageID.13.) Three weeks later, Plaintiff's subsequent appeal of the

---

[2] The ticket indicates that Plaintiff arrived more than 30 minutes late for his call out. (Misconduct Report, ECF No. 1-1, PageID.11)

misconduct conviction was approved, and the misconduct was dismissed. (Compl., ECF No. 1, PageID.4.)

Plaintiff asserts that Defendants Hull, Kimble, and Carter retaliated against him in violation of the First Amendment. Plaintiff seeks compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff expressly claims that Defendants violated Plaintiff's First Amendment rights by retaliating against him for participating in protected conduct. Liberally construing Plaintiff's allegations, the Court will also consider whether Plaintiff's complaints about the disciplinary process state a claim for violation of Plaintiff's Fourteenth Amendment procedural due process rights.

### A.      Retaliation

As noted above, Plaintiff claims that Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.      Defendant Hull

Plaintiff asserts that Defendant Hull retaliated against Plaintiff for his comment that he planned to file a grievance by stating "see if you can write that grievance faster than I get you

6

found guilty on this ticket." (Compl., ECF No. 1, PageID.5 ¶ 23.) The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).

It is not entirely clear that the grievance Plaintiff threatened was "non-frivolous." In *Maben*, the Sixth Circuit emphasized that "the right to file grievances is protected only insofar as the grievances are not 'frivolous.'" *Maben*, 887 F.3d at 264 (citing *Herron*, 203 F.3d at 415). Although the *Maben* panel did not define the boundaries of "frivolousness," they did acknowledge that "[s]ome cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*." *Id*. Among the examples cited is *Scott v. Kilchermann*, No. 99-1711, 2000 WL 1434456, at *1–2 (6th Cir. Sept. 18, 2000). The *Maben* panel noted that in *Scott*, the circuit had found "a grievance frivolous when the inmate complained that he had been subject to verbal abuse." *Maben*, 887 F.3d at 264. That is the same sort of grievance Plaintiff threatened to file here. Accordingly, there is some question as to whether Plaintiff engaged in protected conduct at all. For purposes of this preliminary analysis, however, the Court will presume Plaintiff's threatened grievance was non-frivolous.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

7

Plaintiff alleges the adverse action here was Hull's threat to hasten the processing of the misconduct report.[3] The Court concludes that Hull's threat would not deter a person of ordinary firmness from exercising his constitutional rights. Therefore, Plaintiff has failed to allege facts that support an inference that Hull's threat constituted an adverse action. Accordingly, Plaintiff has failed to state a First Amendment retaliation claim against Defendant Hull.

### 2. Defendant Kimble

Plaintiff alleges that Defendant Kimble lied to Defendant Hull when she stated that Plaintiff was late for his callout because he was "dragging [his] ass." (*Id.*) However, Plaintiff does not allege any facts showing that Defendant Kimble's lie was motivated by a desire to retaliate against him for engaging in protected conduct, or even that he was engaging in protected conduct at all at the time Defendant Kimble made the allegedly false statement to Defendant Hull. Therefore, Plaintiff fails to state a retaliation claim against Defendant Kimble.

### 3. Defendant Carter

Plaintiff alleges that Defendant Carter found Plaintiff guilty of a Class-II misconduct ticket solely on the word of Defendant Hull, and that Defendant Carter told him that there was nothing he could do and that he could not go against his officer. (*Id.*, PageID.3-4.) The allegations in Plaintiff's complaint fail to show that Defendant Carter was motivated by a desire to retaliate against Plaintiff, but merely that he wanted to support his co-worker. Consequently, Plaintiff's retaliation claim against Defendant Carter is properly dismissed.

---

[3] Plaintiff's allegations support the inference that the Hull and Plaintiff were discussing the out-of-place misconduct before Plaintiff threatened to file a grievance. Plaintiff never states the Hull only threatened the misconduct ticket after Plaintiff threatened the grievance. Instead, Plaintiff focuses on Hull's threat that Hull would get Plaintiff found guilty on "this ticket" before Plaintiff could write the grievance. That is, in fact, how the events played out.

### B.        Due Process

To the extent that Plaintiff is seeking to assert a due process claim related to the Class-II misconduct ticket, any such claim lacks merit. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence," or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 486–87 (1995).

No matter what happened with respect to any misconduct ticket, the duration of Plaintiff's sentence would not change. Plaintiff is incarcerated for crimes committed on May 6, 2013. Plaintiff is serving several sentences, including a sentence of life imprisonment without parole for first-degree premeditated murder. The MDOC reward for serving time "misconduct free" has changed significantly over the last 25 years. For years inmates could earn "good time credits." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); Mich. Comp. Laws § 800.33. For prisoners who committed crimes on or after April 1 of 1987, however, "good time credits" were discontinued and replaced by "disciplinary credits." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.33. Then, for prisoners convicted of crimes committed on or after December 15, 1998, for a particular list of crimes, and on or after December 15, 2000, for all other crimes, "disciplinary credits" were replaced by "disciplinary time." *Taylor*, 418 F. App'x at 412; Mich. Comp. Laws § 800.34.

He is subject to disciplinary time with regard to his indeterminate sentences for assault with the intent to commit murder; but not with regard to his life without parole sentence for first-degree murder. Mich. Comp. Laws § 800.34. Disciplinary time accrues when a prisoner is found guilty of a major misconduct. A prisoner's accumulated disciplinary time is submitted to the parole

board for consideration at parole reviews or interviews. Because Plaintiff is not eligible for parole, disciplinary time can have no impact on the duration of his sentence.[4]

Second, the sanctions for a disciplinary finding of guilt would not rise to the level of atypical and significant hardships. Under MDOC Policy Directive 03.3.105, Attachment D, the maximum sanctions for a Class-I misconduct conviction are as follows: 10 days of punitive segregation for each violation, but not to exceed 20 days for violations arising out of a single incident; 30 days of toplock (but not to be combined with punitive segregation); 30 days of loss-of-privileges sanctions, or 60 days maximum for multiple violations arising out of a single incident; and restitution. The sanctions for Class-II and Class-III misconducts are similar, but with shorter maximum durations.

The most significant sanction and, therefore, hardship, is placement in segregation. The Supreme Court has held that placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868

---

[4] Moreover, the Sixth Circuit has concluded that "disciplinary time" never impacts the duration of a sentence in the sense contemplated by *Sandin*. *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009).

(61 days in segregation is not atypical and significant). Lesser sanctions of toplock or loss of privileges would certainly be no worse than segregation. Put simply, any penalty Plaintiff might have faced because of Hull's misconduct report would not rise to the level of an atypical and significant hardship. Accordingly, the Court finds that, to the extent pled, Plaintiff fails to state a plausible Fourteenth Amendment procedural due process claim with regard to the misconduct proceedings.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: ___September 3, 2024___          ___/s/ Sally J. Berens___
                                        SALLY J. BERENS
                                        United States Magistrate Judge

11